PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. JUSTINO RODRÍGUEZ, Defendant and Appellant.

No. 3205.   Argued November 22, 1927.—Decided November 30, 1927.

*F. Cervoni Gely* for the appellant.   *José E. Figueras* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant, an agent and employee of the Universal Commercial Company in charge of the establishment and business of the said company in the municipality of Juncos, was

convicted of embezzlement in ten cases upon as many separate complaints filed by Félix Rodríguez, another agent and employee of the said company, residing in Caguas. The various amounts alleged to have been appropriated by defendant reached in the aggregate something over one hundred dollars, the item covered by the complaint herein being fifteen dollars. At the close of the trial in the instant case the nine remaining cases were submitted by stipulation upon the evidence already adduced which was conceded to be the same upon which the other charges were based.

Fernando Barreras from whom the fifteen dollars was collected and Félix Rodríguez were the only witnesses for the prosecution.

Aside from the identification of a contract purporting to have been entered into by defendant with the Universal Commercial Company, hereinafter referred to as the company, of documentary evidence tending to show the existence of said company and of two receipts issued by defendant in favor of Fernando Barreras and dated February 28, 1926, the testimony of the prosecuting witness, Félix Rodríguez, was in substance that he was in charge of other employees of the company within a certain district, who worked under his orders, and of sales and collections; that he knows Justino Rodríguez who was employed by the company in Juncos; that on March second witness went to the office of the company where Rodríguez was employed and found that he had collected fifteen dollars from one Barreras which he had not reported to the company; that witness asked Rodríguez about the money belonging to the company and Rodríguez answered that he did not have it and for this reason could not deliver it; that Rodríguez told witness he had collected the fifteen dollars from Barreras; that it was the duty of Rodríguez as an employee of the company to collect; that witness went to Juncos for the purpose of examining the office and that the collections were made weekly, that the

collection made by Rodríguez from Barreras corresponded to the report of March third which Rodríguez did not make; that Rodríguez never reported the collection made by him from Barreras, which should have been included in the report for the first week in March; (on cross-examination) that the third of March was Wednesday and that Rodríguez was to make his weekly report on the sixth, covering collections from February 28th to March 2nd; that witness filed the complaint herein on March 3rd, because upon the occasion of his visit defendant did not have the money in his possession and could not make a report without the money; that defendant said to witness: "I have no money, send me to jail"; that witness does not know whether Rodríguez telephoned on the morning of March first, reporting a burglary said to have been committed the night before; that on March first witness visited Juncos and Justino told him about the burglary of the night before; that Justino worked all that day and the next and when witness returned to Juncos defendant had collected some fifty dollars with which he wanted to pay an employee; that Justino did not pay over to witness on that occasion $37.50 without taking a receipt therefor; that it is not true that the company never permitted Justino to deposit money in the Juncos bank; that the thing forbidden by the company was the opening of personal accounts and the drawing of personal checks by its employees; that witness has no knowledge of a number of other burglaries that had been committed in Juncos during the same week; that witness did not remember whether Justino showed him the door through which the burglar was supposed to have entered and explained how the same had been opened, and that Justino had been employed by the company seven or eight months.

Barreras testified to the purchase of a chiffonier from defendant and to the payment of the fifteen dollars for which the receipts already mentioned were given.

Juan Amalbert, a policeman, took the stand as a witness

for the defense to say that defendant's store was burglarized on the night of February 28th and that the burglary was reported at once by defendant; that about the same time a number of other burglaries had been committed in Juncos; that witness knows the place where defendant kept his store which had been previously vacated by the post office because the building afforded no security for the safe keeping of its contents. Another policeman, Juan R. Alejandro, testified that on Monday, March first, at six o'clock in the morning Justino Rodríguez reported at police headquarters the burglary of his furniture store, which was visited by witness, who found marks made by an iron instrument upon the bar of a door which gave access to an alley and was open,—and a wardrobe containing certain files and documents saturated with oil; that witness observed certain footprints and drops of tallow where the money had been kept; that witness opened one of the doors facing the street from the outside by inserting a notebook and lifting the bar; that there were four burglaries about the same time, one of which was committed in the establishment of Alejandro Silva which is situated in front of the place occupied by defendant.

Enrique Reyes, telegraph operator in charge of the telephone office in Juncos, says that Justino Rodríguez was in the office on March first at five minutes past eight o'clock in the morning and asked to be connected with the Universal Commercial Company in Caguas; and that Justino communicated with the company, but witness did not know what the conversation was about.

The statement of Manuel Julbes, cashier of the Roig Commercial Bank of Juncos, is to the effect that his acquaintance with defendant is very slight; that defendant was in the bank upon two occasions, once alone and at another time accompanied by another employee of the Universal Commercial Company; that Justino wanted to deposit money belonging to the company, explaining that as agent he received

weekly a sum of money, which was to be sent to the main office; that the company would not authorize the purchase of post office money orders, and inquired as to how the desired result could be accomplished without expense to himself or to the company; that witness informed Justino and the other agent of the company that if they wanted to deposit they would have to pay a small commission, to which the agent last mentioned replied that no money could be paid as commission, and that the reason why the money was not deposited was that they did not wish to pay a commission on deposits.

Julio Rosa, a former agent and employee of the company in Juncos, testified to a somewhat similar experience with reference to the money handled by him and in connection with his efforts to arrange for a deposit.

Defendant's story is that on March first at about six o'clock in the morning he opened the "Universal," of which he was in charge, and found a door open; that defendant's first thought was that his assistant might have left the door open through forgetfulness, but upon going at once to look for the money and papers which defendant kept in the wardrobe, he found everything in disorder, the wardrobe opened and drops of tallow scattered about, in addition to the fact that the money had disappeared; that defendant immediately proceeded to report the matter at police headquarters; that the money stolen amounted to one hundred and sixty dollars, including the fifteen dollars collected from Fernando Barreras; that later defendant collected thirty-seven dollars and fifty cents which he delivered to Félix Rodríguez, agent of the company, in defendant's office, where Rodríguez demanded that it be turned over to him for delivery to the company; that on three or four occasions defendant endeavored to arrange for a deposit in the bank but the company objected to this in order to avoid payment of the commission charged by the bank, and defendant was unable to pay this out of his own pocket; that on March first at about half past eight o'clock

defendant reported the burglary to the company by telephone, requesting that some one be sent, and shortly thereafter Félix Rodríguez arrived in Juncos; that Félix Rodríguez stated his belief that the money had been stolen as the result of defendant's negligence, but told defendant not to worry, that he (Félix Rodríguez) did not think defendant would lose his position on account of one hundred and sixty dollars; that the grinding season was about to open and defendant would earn more than enough to reimburse the one hundred and sixty dollars, a suggestion which defendant did not accept because he believed it would reflect upon his conduct as equivalent to the admission of an act of which defendant was not guilty; that Rodríguez gave no receipt for the thirty-seven dollars and fifty cents delivered to him by defendant, and that Rodríguez never gave receipts when he came to collect; that the transaction with Fernando Barreras occurred on February 28th and defendant was accustomed to report to the company on Monday and the third of March was on Wednesday; (on cross-examination) that defendant kept nothing in his office but money and furniture and that nothing but the money disappeared; that defendant usually arrived at his office at six o'clock, half past six or seven and that the telephone conversation was had with Félix Rodríguez, informing him of what had happened; that defendant did not demand of Félix Rodríguez a receipt for the thirty-seven dollars and fifty cents because of the confidence which defendant had in the said Rodríguez; that defendant never suspected that Félix Rodríguez would do a thing like this.

Andrés Agosto worked for defendant and says that on Monday, the day after the burglary, Félix Rodríguez came to Juncos and Justino paid over to him in the presence of witness thirty-seven dollars and fifty cents and that Félix came again on Tuesday.

Francisco Rivera who had bought a refrigerator on the instalment plan was another eye-witness to the delivery of

the thirty-seven dollars and fifty cents and fixes the time of the delivery at two o'clock in the afternoon on Tuesday.

Carlos García de la Noceda, a practising attorney, tells us that Félix Rodríguez in the office of witness in Juncos and in the presence of witness said to defendant: "I do not want to harm you and I will help you with forty or fifty dollars to settle this matter. Help me to settle the account and go on working for the company;" that Justino declined to accept this proposition on the ground that such acceptance would amount to a confession of guilt.

Félix Rodríguez in rebuttal denies that Justino Rodríguez talked to him by telephone, insists that the conversation referred to by García de la Noceda did not take place in the office of the attorney and says that while witness was with another attorney, Villamil, García de la Noceda called witness and proposed a settlement in the office of the Justice of the Peace; that they wanted to hush the matter up.

Félix Rodríguez, by his own statement, was in charge of the agents and employees as well as of all collections made within his district. He seems to have been also more or less responsible for the selection and employment of Justino Rodríguez. He may or may not have been responsible for the refusal on the part of the company to permit a deposit by its local representative in Juncos of the money collected by him in the Roig Commercial Bank. In any event, Félix Rodríguez appears on behalf of the company in the written contract of employment by and between the said company and Justino Rodríguez, and the statement by Félix Rodríguez as a witness that the company interposed no objection to the making of such a deposit is directly contradicted not only by the testimony of defendant but also by the former agent and local representative of the company in Juncos and by the cashier of the Roig Commercial Bank. Moreover, Félix Rodríguez does not deny that he urged defendant to continue his work as an employee of the company and to cover the

shortage in his account out of future earnings, or that later he, the said Félix Rodríguez, in the presence of García de la Noceda asked defendant to assist him, the said Félix Rodríguez, in the settlement of the account and offered to contribute forty or fifty dollars to this end. Félix Rodríguez denies the telephone conversation which is said to have taken place on March first, but he is contradicted upon this point not only by the defendant but also by the telegraph operator in charge of the public telephone service in Juncos. Félix Rodríguez denies that Justino Rodríguez delivered to him thirty-seven dollars and fifty cents during one of the several interviews which occurred shortly after the alleged robbery, but here also the denial is met not only by the testimony of defendant but also by that of two other witnesses. The telephone conversation, in the absence of any other explanation, seems to be the most obvious reason for the visit made by Félix Rodríguez on March first within a few hours after the alleged robbery. Félix Rodríguez also says that within twenty-four hours after this said visit Justino Rodríguez collected some fifty dollars which he (Justino) wanted to pay over to another employee, but it does not appear that Justino was permitted to do so. Nor is it shown that the money remained in his possession. In the circumstances, unless the alleged payment of thirty-seven dollars and fifty cents be regarded as an admission that Justino retained twelve dollars and fifty cents out of the fifty dollars mentioned by Félix Rodríguez, and entirely aside from any question as to the actual payment of the said sum of thirty-seven dollars and fifty cents, it would seem to be a reasonable inference that the fifty dollars that Félix Rodríguez says Justino wanted to pay over to his employee or to an assistant who is not shown to have been an employee of the company, was in fact turned over to the said Félix Rodríguez.

The fact that Justino Rodríguez, as agent of the company, collected money which he failed to deliver on demand is

undisputed. For the purposes of this opinion it may be conceded that no payment was ever made and that the unexplained failure to pay over to the principal on demand or thereafter money collected by an agent is enough to sustain a conviction of embezzlement. The question remains as to the sufficiency of the explanation offered in the instant case. The fact that the prosecuting witness is contradicted at every turn is most significant in connection with the bearing of that testimony upon this question.

There is little or no room for doubt that defendant reported a burglary early in the morning of March first, that there was strong circumstantial evidence tending to show that a burglary had been committed, and the fact is that several other offenses of the same kind were reported about the same time, one of which was committed in a building across the street from defendant's place of business. The theory of defendant's guilt necessarily involves the hypothesis that he was not only guilty of embezzlement but also of a deliberate attempt to cover his offense and to avert suspicion. It assumes that defendant left open a side door, marked the bar or fastening in a way to indicate the use of a burglar's tool from the outside, broke open the wardrobe where his papers and documents were kept, reduced the contents of this pretended safety deposit box to disorder, sprinkled the floor with drops of tallow from a candle and then reported a burglary. Thus the controversy narrows down to an inquiry as to whether defendant is telling the truth about what he found upon his arrival at six o'clock in the morning of March first or whether he himself prepared the stage setting for the ocular inspection by the police which ensued upon receipt of the report at headquarters.

Defendant's statement as to the condition of the premises at the time of his arrival on the morning of March first is neither corroborated nor contradicted. Félix Rodríguez is the only witness who contradicts defendant upon any point.

Wherever the statement of either of these two witnesses comes in contact with that of any other witness the testimony of defendant is uniformly corroborated and that of Félix Rodríguez is with equal uniformity either flatly or indirectly contradicted and usually by more than one other witness.

It does not follow, of course, as an inevitable conclusion that the story as told by defendant upon the stand is true or that the testimony of the prosecuting witness is false. It was not incumbent upon the defendant to establish his innocence by a preponderance of the evidence. It is enough to say that the evidence as a whole can not be said from any rational viewpoint to establish his guilt beyond a reasonable doubt. Making due allowance for the manner in which the respective witnesses may have conducted themselves upon the stand, about the most that can be said in favor of the prosecution is that the trial judge had ample ground perhaps upon which to base a strong suspicion that defendant's version of the matter was false and that what the police found upon viewing the premises was a mere smoke screen. But a suspicion of guilt, however strong and well-founded, does not suffice to sustain a conviction in a criminal case. If the evidence as a whole did not give rise to a reasonable doubt in the mind of the court below, then the court below manifestly erred in weighing the evidence.

The judgment appealed from must be reversed.